# 24-0258-cv

## United States Court of Appeals
### *for the*
## Second Circuit

———————————

BARBARA ANN HARTKE, an individual on her own behalf and
on behalf of the Estate of decedent GILBERT V. HARTKE,

*Plaintiff-Appellant,*

— v. —

BONHAMS & BUTTERFIELDS AUCTIONEERS CORPORATION,
A Delaware Corporation, THE CATHOLIC UNIVERSITY OF AMERICA,
A non-profit District of Columbia Corporation,

*Defendants-Appellees.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR
## PLAINTIFF-APPELLANT

ANTHONY SCORDO
ANTHONY SCORDO ESQ. PC
*Attorneys for Plaintiff-Appellant*
69 East Allendale Road
Saddle River, New Jersey 07458
(973) 837-1861

CP COUNSEL PRESS (800) 4-APPEAL • (329207)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ...........................................................1

JURISDICTIONAL STATEMENT .......................................................3

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW ...........................3

STATEMENT OF THE CASE ............................................................4

SUMMARY OF THE ARGUMENT ....................................................11

ARGUMENT ..............................................................................12

    I.    The lower court exceeded its jurisdictional authority and abused its discretion by dismissing the matter under Rule 17 for plaintiff's lack of capacity to sue on behalf of decedent's estate; such dismissal while deemed without prejudice, was effectively, with prejudice, barring plaintiff or any representative of the estate from seeking return of estate property in the U.S. courts ....................................................12

    II.    The lower court erred in applying New York state law in determining plaintiff was without standing to sue on behalf of the decedent's Estate, while not yet appointed Estate representative, as extraordinary circumstances existed as the former representative violated Probate procedures in relying upon the Vow of Poverty to bypass his obligation to inventory decedent's personal property ............................................21

CONCLUSION ............................................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

Brohan on Behalf of Brohan v. VW Mfg. Co.,
  97 FRD 46 (EDNY 1993) ...................................................................14

All. For Env't Removal Inc. v. Pyramid Crossgates Co.,
  436 F. 3d 82 (2d Cir. 2006)................................................................12

Estwick v. US Air Shuttle,
  950 F. Supp. 493 (EDNY 1996) .......................................................14

Grupo Dataflux v. Atlas Global Group,
  541 US 567 (2004)..............................................................................15

In re Estate of Attea,
  12 N.Y.S. 3rd 522 (NY Surrogate Court 2015) .............................23

Levinson v. Deupree,
  345 US 648  (1953)..............................................................................14

Lewis v. Dimaggio,
  115 A. D. 3d 1042 (3d Dept. 2014) .................................................21

Lexmark International Inc. v. Static Control Components,
  522 US 118 (2014)..............................................................................12

Liu v. Westchester County Med Ctr.,
  837 F. Supp. 82 (S.D.N.Y. 1993) ....................................................15

E.R. Squibb. Lloyd's Companies,
  241 F. 3d 154 (2d Cir. 2001)............................................................15

Morrison v. National Australia Bank,
  561 US 247 (2010)..............................................................................12

Thompson v. Radoska,
  895 F. Supp. 113 (E.D. La. 1995) ...................................................16

Zapata v. City of NY,
  502 F. 2d  (2d Cir. 2007).................................................................18

**Statutes & Other Authorities:**

15 USC sec. 1125 (a) .................................................................10

28 USC sec. 1291 ........................................................................3

28 USC sec. 1332 .........................................................................3

28 USC sec.  1332(a)(1).............................................................14

28 USC sec. 1332(c)(2)................................................15, 16, 17

F. R. Civ. Pro. 17 ...............................................................*passim*

F. R. Civ. Pro. 17(a)..........................................................*passim*

F. R. Civ. Pro. 17(a)(3) .............................................................13

F. R. Civ. Pro. 17(b) ...............................................12, 13, 21

Plaintiff Barbara Ann Hartke (hereinafter "plaintiff") respectfully submits this memorandum of law in support of her appeal from the Memorandum Opinion and Order of January 23, 2024  (slip opinion, SPA-1) , of the United States District Court for the Southern District of New York (Hon. Paul G. Gardephe) denying her motion to file the proposed Second Amended Complaint and dismissing the action with prejudice.

## PRELIMINARY STATEMENT

Plaintiff is the niece of the late  Gilbert Hartke ("Father Hartke" or "decedent" who passed away in the District of Columbia in 1986 (Father Hartke). Father Hartke owned considerable property when he passed away including a dress worn by Judy Garland in the 1939 film the Wizard of Oz.  A-14.  Father Hartke's appointed estate representative was another priest, one Joseph  Allen, a member of his Order, the Dominicans, also know as the College of the Immaculate Conception.  A-106.  Father Hartke died intestate and, as personal representative Allen was responsible for administering the estate and distributing his property.  A-106.  Allen reported to the Probate Court that Father Hartke owned no personal or real property at his death and accordingly distributed none to any of his heirs, which included plaintiff. A-111.  In 1986, Allen  improperly described plaintiff in the list of heirs he prepared to provide notice of the probate as a relative by

marriage though plaintiff is, in fact, his niece by blood. A-116. Allen also sent the notice to a multistory apartment building in Chicago with no apartment number listed. A-116.

The Dress was missing for 35 years but located in 2021 at the premises of defendant Catholic University of America ("CUA") where father Hartke was a teacher since his ordination in 1935 and longtime head of the Drama Department. A-139. His close friend, actress and Academy Award winner Mercedes McCambridge gave Father Hartke the Dress in 1973 to thank him for his friendship and counselling. A-15. There is not one scintilla of evidence in the record demonstrating that the Dress was ever given to CUA.

Nonetheless, without notifying any of his heirs, including plaintiff who is only one of two still living at that generational level, CUA went ahead and placed the Dress up for auction with a private auction house, defendant Bonham's & Butterfield's (Bonham's) with headquarters in New York City. A-16. Plaintiff and other relatives only became aware of reemergence of the Dress when defendants publicized same on national news and entertainment shows, announcing that the Dress was located in NYC and the auction would take place in Los Angels in several weeks. A-16. Plaintiff filed this action under severe time constraints seeking to enjoin the auction. This litigation followed. Judge Gardephe enjoined sale of the Dress at auction by way of temporary and preliminary restraints in May

2022. A-21. Discovery was stayed and plaintiff moved under 12b for dismissal. A-226. After 14 months and no discovery the motion was granted without prejudice to amending the complaint on December 11,2023. A-299. Plaintiff moved to file a second amended complaint and sought continuance of restraints. A-317. That motion was denied dismissing action without prejudice and ordering that restraints be dissolved. This appeal follows.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this action under 28 USC sec. 1332. The District Court's order of January 23, 2024 disposed of all claims and dismissed the action in its entirety. (SPA-1, SPA-17) On February, 2024 plaintiff filed timely Notice of Appeal from the Orders of December 13, 2023 and January 23, 2024. (A-594) This court has jurisdiction over this appeal under 28 USC sec. 1291 as it is an appeal from a final decision of the district court disposing of all parties' claims.

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

1. Whether the court abused its discretion in dismissing the complaint without prejudice rather than permit plaintiff to continue to prosecute lawsuit while her application for to be representative was pending, and the court failed to recognize that dismissal without prejudice effectively barred plaintiff from seeking relief in any federal court.

3

2. Whether the court erred in determining that the failure of the Estate representative to properly inventory decedent's tangible personal property did not constitute extraordinary circumstanced under New York state law.

## STATEMENT OF THE CASE

This Complaint arises out of an advertisement by Bonham's indicating that an auction was scheduled to take place on May 24, 2022 at 10:00 AM PDT of "An Important Costume worn by Judy Garland as Dorothy in the Wizard of Oz." M.G.M. Designed by Adrian. According to the advertisement on Bonham's website:

> The dress worn by Judy Garland as Dorothy Gale throughout the scene set in the Witch's Castle, when the Wicked Witch of the West [Margaret Hamilton] has captured Dorothy and threatened her with death. Comprising a blue and white gingham pinafore dress with a fitted bodice and a full skirt, with handkerchief pocket, two mother of pearl buttons in the front and two to the reverse, wit a hook and eye closure at the back with fabric label in side inscribed 'JUDY GARLAND 4223' with a short sleeved blouse of cram organdy with a high neck trimmed at the neck and cuffs with pale blue rickrack trim, the blouse with hook and eye closure to the neck and snap closure to the body.
>
> Provenance
> Mercedes McCambridge
> The Catholic University of America

The website states $800,000-$1,200,000 in describing the dress, apparently estimating the successful bid. Upon information and belief, said figures underestimate the actual selling price.   A-14

4

Defendants falsely claimed that the "Important Costume" advertised on the Bonham's website to be auctioned has the provenance, i.e. originates with, or has an earliest known history with, solely the late Mercedes McCambridge and Catholic University. A-14. This claim is false because, while at one point McCambridge was the owner of the dress, McCambridge specifically and publicly gave the aforesaid dress to decedent Gilbert V. Hartke and said dress is therefore an asset of decedent's estate. A-14.

Upon information and belief, the dress was missing for decades and relocated in 2021 with decedent's belongings in a storage location on the Catholic University campus where decedent a Roman Catholic priest, was long employed as a University Professor and Drama Department Chairman. A-139. Catholic University apparently has made no attempt to locate decedent's heirs since the dress was relocated. Catholic University has no ownership interest in the dress as there is no documentation demonstrating that decedent ever formally or informally donated the dress to Catholic University.

Plaintiff Barbara Ann Hartke, as rightful heir of decedent on her own behalf and on behalf of any other living and rightful heirs of his Estate, here sought the District Court's intervention to immediately grant a temporary restraining order and/or a preliminary injunction enjoining Bonham's from continuing the auction in

order to prevent irreparable harm that will result if the dress is transferred to unknown buyers. When the Verified Complaint was filed the dress was physically located at the time of filing at Bonham's place of business, 580 Madison Avenue, New York NY. The Dress has great and substantial sentimental value to plaintiff, is unique, and is recognized worldwide as an iconic image of perhaps the most beloved and watched film in the history of cinema. A-16. Ms. Garland, the late actress who wore the dress in the film is, of course, immortal and still has millions of admirers and devoted fans throughout the world. Her character, Dorothy was and to this day remains a heroine of young girls everywhere. A-16. The property is priceless and defendants' conversion of same has caused and continues to cause great emotional harm to the plaintiff as the closest living heir of Gilbert V. Hartke. A-16. Defendants failed to employ due diligence, or, for that matter, any diligence at all in attempting to locate the heirs of Gilbert V. Hartke and advise them of the finding of the dress and their intent to sell it without any compensation to its rightful owner, his Estate.

Plaintiff Barbara Ann Hartke is only one of two known living nieces or nephews of Gilbert F. Hartke (known to family and friends as Gib). Her father Eugene was Gib's brother. A-151. They were very close as Eugene and Gib were the sixth and seventh children of plaintiff's grandparents Emil Hartke and Lillian Hartke and only two and a half years apart. Decedent's father Emil was plaintiff's

6

godfather. His sister Berenice, whom he was closest to among his siblings, was plaintiff's godmother. Plaintiff grew up in the Chicago area as did most of the immediate family. Decedent left the area in 1929 to enter the seminary and four years later was ordained a priest of the Order of Preachers (O.P.) also known as the Dominicans. Plaintiff was born in 1940 at which time decedent was about 33 years of age. Until his death in 1986, decedent resided at the Dominican House and taught drama at the Catholic University in Washington D.C. A-152.

Despite living in DC, Father Hartke remained in very close contact with his family in Chicago for his entire life. He would visit the Chicago area often for a lot of reasons, including performances. He would often visit on Christmas and Easter would stay with his father Emil and later his sister Berenice rather than in the Dominican residence. During his visits to Chicago, decedent would make the rounds and visit the family and often bring presents for me and the other children. Decedent was known as the prince of the family and when he visited he would tell stories of his and everyone would gather around to hear them. A-152.

When plaintiff lived in downtown Chicago in the late 1970s and early 1980s, she often met Mercedes McCambridge at the Ambassador East Hotel. She and plaintiff's eighth-grade teacher, a Benedictine nun had both attended Mundelein College and they were very close. Plaintiff also attended Mundelein and received an education degree there and we had that in common. Plaintiff recalls

meeting with Ms. McCambridge shortly after decedent passed away in 1986. Then Plaintiff and McCambridge acknowledged Mccambridge's love for her uncle and expressed how important he had been to her; she considered him her priest. McCambridge had a difficult private life and had two failed marriages. She credited decedent with helping her overcome alcoholism and helped improve her relationship with her son. A-153.

Father Hartke, was in his own right, a famous public figure, close to Presidents, First Ladies, Hollywood stars and political and public figures worldwide. His contributions to the University, the world of drama and to the District of Columbia community are still recognized and honored. A-16.

Father Hartke's estate, as reported to probate by his personal representative Joseph Allen, contained no tangible personal property at all. But it is uncontradicted that Father Hartke possessed a light blue Cadillac limousine. A-349. This vehicle, often driven by his students acting as chauffeurs, became synonymous with Uncle Gib's flamboyant style, his panache, and his custom-made garments made by a famous DC tailor. A-351. Also, Father Hartke owned ceremonial items in his role as Catholic priest, including a personally engraved 18-carat gold chalice inscribed with his name (given reportedly by the first lady of the U.S. theatre Helen Hayes) and used when he celebrated mass. A-346. He cherished a copper crucifix reported to have been

grasped in his hand at the time of his passing and never accounted for by Allen. This crucifix held personal significance throughout his life, and it was reported and understood in the family. Father Hartke was also renowned for his distinguished wardrobe, comprising fine, custom-made suits and shirts made by a famous tailor in Washington. A-351.

Father Hartke always wore expensive European watches including Patek Philipe and Rolex and had an extensive watch collection. A-351. During his tenure as a priest received various tokens of appreciation, including gold-engraved bracelets and gold signet rings demonstrating the sentimental value and testament to the connections he formed throughout his life. Father Hartke was gifted a uniform by the U.S. Department of Defense (DOD) for his service during WWII when he served as a chaplain. A-351. He also helped with entertainment and the production of educational and propaganda materials and training films for the U.S. Army. Decedent kept the uniform and the insignia from the DOD for the remainder of his life. Other possessions included items of sentimental value, such as a full-length fur coat and a fur military hat from Central Europe , a French beret. This beret was reported to be a gift to decedent from Salvador Dali. A-351

The original filed Verified Complaint was filed by plaintiff individually and as representative of the Estate. The Complaint contained counts seeking declaratory relief in the form of a declaration of ownership of the Dress, claims for conversion and return of personal property, false advertising under the Lanham Act, 15 USC sec. 1125 (a) and a separate Count seeking injunctive relief. That Complaint was dismissed under New York law for decedent's lack of standing to represent the Estate as never having been appointed estate representative. The court refused to recognize that Allen's failure to inventory any of Father Hartke's property after he died was an extraordinary circumstance under New York law. In coming to that conclusion, Judge Gardephe accepted defendants' position that Father Hartke's so-called Vow of Poverty from 1933 purportedly prohibited him from owning property (A-108) and explained why Allen, as Estate representative did not bother to even inventory decedent's property in 1986. It should also be noted that, in the original decision dismissing the Complaint for plaintiff's lack of capacity, Judge Gardephe failed to even address the applicability of Rule 17

After dismissal of the original complaint and pursuant to a very short deadline, on January 2,2024 Plaintiff moved to amend the original complaint to include a claim for replevin and to set forth what steps she had taken since the original filing to be appointed as Estate representative. In her brief opposing dissolution of the injunction, she pointed out that Rule 17 permitted plaintiff to act

10

as administrator while her application was pending. She also cited to New York precedent holding that in New York the vow of poverty is properly treated as a mere contract and does not permit an estate representative to bypass probate procedures for those alleged to be subject to same. Regardless, the case was dismissed without prejudice. This appeal follows.

## SUMMARY OF THE ARGUMENT

The court abused its discretion in dismissing the complaint under Rule 17 for plaintiff's lack of capacity to represent the estate. The court should have properly allowed the suit to continue while the application was pending. Dismissal without prejudice was essentially dismissal with prejudice as any dismissal would destroy complete diversity once plaintiff is appointed and thus preclude jurisdiction in any United States court. The Court reversibly erred in determining the former Estate representative's failure to inventory the personal property of the Estate did not constitute an extraordinary circumstance permitting plaintiff to pursue this suit on behalf of the Estate without not yet having been appointed representative.

## ARGUMENT

**I.    The lower court exceeded its jurisdictional authority and abused its discretion by dismissing the matter under Rule 17 for plaintiff's lack of capacity to sue on behalf of decedent's estate; such dismissal while deemed without prejudice, was effectively, with prejudice, barring plaintiff or any representative of the estate from seeking return of estate property in the U.S. courts.**

Article III standing is a constitutionally protected limit of a court's power to hear a case. Morrison v. National Australia Bank, 561 US 247 (2010). Statutory standing by contrast does not implicate the court's constitutional power to adjudicate a case. Lexmark International Inc. v. Static Control Components, 522 US 118 (2014). However, when a federal court dismisses a case for lack of statutory standing, usually for lack of subject matter jurisdiction under Rule 12 (b)(1) , such dismissal must be without prejudice as Article III deprives the court of the power to dismiss with prejudice. All. for Env't Removal Inc. v. Pyramid Crossgates Co., 436 F. 3d 82 (2d Cir. 2006).

This matter was dismissed without prejudice on grounds of plaintiff's lack of statutory standing pursuant to F. R. Civ. Pro. 17(b) *Capacity to sue or be sued,* providing that for all parties not acting in a representative capacity, such capacity is determined in accordance with the law of the state where the court is located. The court here ruled that New York law provided that except in extraordinary

12

circumstances only a duly appointed personal representative was entitled to bring suit on behalf of a decedent. The court held that such circumstances did not exist here because plaintiff, though an heir, was not personal representative of the decedent's estate and thereof the court lacked federal subject matter jurisdiction, As such plaintiff's action was dismissed without prejudice, the court recognizing that Article III prohibits dismissal with prejudice under Rule 12(b)(1) when the reason for dismissal was lack of subject matter jurisdiction. Slip op. at 16, n.9.

However, the lower court also acknowledged the applicability of Rule 17(a), entitled *Real Party in Interes*t, which provides that the court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. Slip op. at 14 citing King v. Wang, Civ. No. 14 Civ. 7694 (unpub. S.D.N.Y. 2018). Rule 17(a)(3) provides that a standing defect <u>at the commencement of suit</u> does not require dismissal with prejudice and, should the real parties in interest wish to substitute for correct plaintiff and therefore the court <u>must</u> allow those parties a reasonable time with which to do so. F. R. Civ. Pro. 17 (a)(3) *Joinder of the Real Party in Interest*. And, as several lower courts have recognized in this Circuit, courts seeking to dismiss a matter for lack of subject matter jurisdiction, where the named plaintiff is suing on behalf of an estate with an invalid administrator, must allow time to permit substitution of a valid

13

administrator. Estwick v. US Air Shuttle, 950 F. Supp. 493 (EDNY 1996) Brohan on Behalf of Brohan v. VW Mfg. Co. 97 FRD 46 (EDNY 1993). King, supra. The record here clearly reflects that plaintiff diligently pursued her application to be appointed valid representative with the Probate Court in the District of Columbia. Quoting Estwick, "deficiencies in standing (may be) cured by plaintiff's subsequent appointment as administratrix" and holding otherwise would be contrary to the liberal policy underlying Rule 17 a." That application remains viable and pending there in an archaic, plodding system. It took more than a year just to obtain the 1986 file from the archives.  A-319.

In Brohan, the court quoted the Advisory Committee Note accompanying the 1966 amendment to Rule 17(a) stating the rule was intended in part to codify the salutary principle of Levinson v. Deupree, 345 US 648  (1953) in which the Supreme Court allowed a plaintiff whose appointment as estate administrator was defective at the outset of the lawsuit to amend his complaint to allege his new correct appointment, after the statute of limitations had run. Brohan, supra. at 49 quoted in  King, supra.

This matter was brought under the general diversity statute, 28 USC section 1332(a)(1), conferring upon federal courts jurisdiction over disputes between citizens of different states. The Amended Complaint asserts a federal claim for advertising injury under the Lanham Act  and state common law claims for

14

equitable relief of replevin, and unjust enrichment and monetary relief of conversion of property. The amount in controversy has never been disputed. As plaintiff is a citizen of the State of Wisconsin , defendant CUA a citizen of the District of Columbia and Bonhams, of the State of New York, diversity of citizenship clearly existed at the time of the filing of the Complaint. It is black letter law that once a complaint is filed a subsequent change in the law or citizenship of the parties can neither cure nor destroy diversity. Grupo Dataflux v. Atlas Global Group, 541 US 567 (2004); E.R. Squibb. Lloyd's Companies, 241 F. 3d 154 (2d Cir. 2001).

The diversity statute, 28 USC section 1332(c)(2), was amended in 1988 to provide that, for purposes of determining diversity of citizenship, the legal representative of the estate shall be deemed to be a citizen only of the same state as the decedent. The amendment was enacted to proscribe forum shopping by parties seeking a friendlier jurisdiction based upon the citizenship of the preferred representative of an estate. The intent of (c)(2) was to remove all questions as to same. Liu v. Westchester County Med Ctr., 837 F. Supp. 82 (S.D.N.Y. 1993). However, courts have noted, that 1332(c)(2), at least in the context of claims for wrongful death, was not supposed to compromise one of the main goals of diversity of citizenship, i.e. to reduce the risk of local prejudice, the theory being the decedent and defendant must both have resided in the same state. However, this

15

is not a wrongful death suit; here decedent passed away 40 years ago, and the putative plaintiff has never lived in the District of Columbia where decedent died. There are, simply put, no protections from the possibility of local prejudice against the plaintiff requiring her to litigate in the state court there.

In Brown v. Guscott, Civ. No, 02-0858 (unpub D.N.M. 2002) plaintiff decedent from Louisiana was killed on his motorcycle after colliding with car driven by defendant of New Mexico. Decedent's infant daughter sued defendant in NM state court but later learned he had died. Co-defendant Allstate originally removed the New Mexico state court action on grounds of diversity. Plaintiff moved to remand on grounds of lack of complete diversity as under 1332( c) (2) defendant representative was automatically deemed a citizen of New Mexico. The court denied the motion to remand for three reasons, first the fact that plaintiff was unaware defendant had died could have no effect on his citizenship, second, a defendant that dies prior to filing of a lawsuit is not deemed a citizen of the place he died for diversity purposes, and third because whether a personal representative is substituted as a real party after commencement of the federal lawsuit (or after removal) has no bearing on determining diversity of citizenship. Ibid., citing Thompson v. Radoska, 895 F. Supp. 113, 115 n.4 (E.D. La. 1995).

Here, plaintiff Hartke's citizenship for federal diversity purposes in the subject lawsuit cannot change whether she is appointed personal representative or

16

not, even though she would be automatically deemed a citizen of the District of Columbia when and if she is appointed as personal representative of the estate. 1332 (c)(2). However, under the current circumstances when and if she decides to refile should this appeal be unsuccessful, because the matter has been dismissed only without prejudice, it can be surmised that the doors of any federal courthouse would be barred to her for lack of complete diversity since she and CUA would both be deemed citizens of the District of Columbia. Thus, the practical effect of dismissal here was really not without prejudice, but instead with prejudice, barring her from refiling in federal court. On appeal therefore she maintains that the district judge abused his discretion by prematurely dismissing this matter on standing grounds at the same time ironically depriving (after presumed appointment) of subject matter jurisdiction in federal court should she elect to refile. The decision thus subjects her to litigating in an unfriendly forum (which appears to be limited to the DC Superior Court) thus effectively defeating the purpose of federal court diversity jurisdiction.

Here there was never any allegation of forum shopping as the matter was brought in the Southern District of NY for one reason only, the presence of the Dress here and the need for a preliminary injunction to prevent auction of the Dress. The lower court effectively did an end run around its jurisdictional limits with respect to Article III standing in using the device of dismissal for lack of

17

subject matter jurisdiction without prejudice but at the same time effectively

dismissing the matter with prejudice, thereby depriving plaintiff of her right to

invoke federal court jurisdiction as she is entitled.

This court has recognized situations where, when dismissal with prejudice

has the same practical effect as dismissals with prejudice, the court should exercise

its discretion in relaxing time restrictions and allow the action to proceed. Zapata

v. City of NY, 502 F. 2d 192 (2d Cir. 2007) (where limitations period had already

run). In such situations, the court must weigh the impact of extending or refusing

to extend the time period on the parties. Ibid. Here, as set forth above, the dismissal

without prejudice essentially barred plaintiff or any estate representative from

seeking relief in the federal courts and plaintiff maintains that court abused its

discretion in determining that plaintiff was somehow given a reasonable time to

substitute the estate representative for the proper party. Capacity or lack thereof to

sue under Rule 17 is non-jurisdictional in nature and can properly be waived by the

court. Revitalizing Auto Comms. Envt'l Response v. National Guard, Case No.

20-1931 (2d Cir. 2021). Here, plaintiff maintains that she diligently pursued her

application to be appointed personal representative which she initiated almost

immediately after the lawsuit was commenced. The court will observe by a careful

review of the record that plaintiff only became aware of the existence of the Dress

a few weeks before she instituted this suit. The reason for the delays in the DC

Probate Court are also well documented in the proposed Second Amended Complaint. A-319.The Court's ruling that the reasonable time period required to allow substitution of the real property of Rule 17 had expired was arbitrary and constituted an abuse of discretion here, where dismissal without prejudice is effectively the same as dismissal with prejudice and bars plaintiff from seeking relief in federal court. It should be recalled that, despite the months that passed before rendering a decision on defendants' 12(b) motion, the court refused to permit, on plaintiff's informal application, vacation of a consent order indefinitely staying discovery, and no discovery was permitted even of non-parties though the staying Order did not address same. Plaintiff subpoenaed non-party Joseph Allen at his residence in New York City, but the court quashed same.A-288. But at the same time, the court insulating Allen from being deposed, the court ruled that the Complaint failed to set forth in detail "extraordinary circumstances" during Allen's tenure as estate representative such as fraud or misrepresentation. See, Point II, infra asserting that the court's conclusion in that regard misapplied New York law.

Generally, the lower court abused its discretion in failing to give plaintiff a reasonable amount of time to complete her application to be appointed representative of decedent's estate  pending in the DC probate Court. Judge Gardephe cited Judge Keenan's opinion in King v. Wang, supra  with approval, but in reality rejected Judge Keenan's reasoning *in toto*. He also failed to recognize

that plaintiff's appointment after dismissal would destroy complete diversity and thereby bar her or any representative from any US courthouse. It should also be noted that plaintiff's position from the outset has been that the probate exception to federal jurisdiction was completely inapplicable to this case where the only claims for relief are those seeking to augment the estate and not distribute same. See King v. Wang, supra. This dispute is not properly resolved in the DC or any other Probate Court where the Estate would necessarily be precluded from seeking a jury trial.

In addition, CUA should have no standing whatsoever to appear in an action probating Father Hartke's estate. The fact that CUA has demonstrated their hubris by filing papers there where they have no standing as heir or otherwise and have apparently not been remonstrated and. or booted out of court (A-430), shows why plaintiff is appealing Judge Gardephe's unfair ruling and seeks to have her claims disposed of under federal diversity jurisdiction rather than be subject to local prejudice.

**II.     The lower court erred in applying New York state law in determining plaintiff was without standing to sue on behalf of the decedent's Estate, while not yet appointed Estate representative, as extraordinary circumstances existed as the former representative violated Probate procedures in relying upon the Vow of Poverty to bypass his obligation to inventory decedent's personal property.**

Fed. R. Civ. Pro 17(b) provides that, where an individual seeks to sue in a representative capacity rather than on his or her own behalf, capacity is determined by the law of the state where the court is located. Judge Gardephe noted that New York law provides that absent extraordinary circumstances such as fraud or intentional misrepresentation, plaintiff being an heir, not appointed personal representative, she lacked capacity to sue under New York law, (slip op. at 12 citing Lewis v. Dimaggio, 115 A. D. 3d 1042, 1044 (3d Dept. 2014). In seeking to amend her Complaint, Plaintiff did not object to Judge Gardephe's recitation of New York law in that regard. Rather plaintiff maintained that the actions of prior representative Allen, by not inventorying decedent's personal property, clearly violated DC Probate procedures that were in effect when the Estate was probated and thus, Allen's sworn assertion to the DC Probate Court at the time stating that the Estate contained no tangible personal property indeed constituted a misrepresentation, whether deemed intentional or not.

The lower court refused to accept that Allen's undisputed violation of his statutory obligation to marshal and inventory property, at a time where the Dress

21

should and would have been discovered, constituted extraordinary circumstances qualifying plaintiff as an heir to sue on behalf of the estate seeking return of later discovered estate property before it was disposed of. Plaintiff maintains denying her the status of at least temporary capacity to pursue the lawsuit while applying to be deemed estate representative was reversible error. And now that the injunction has been dissolved, the possibility that this undisputedly unique and valuable piece of property will disappear is a real danger. Judge Gardephe's erroneous ruling that plaintiff lacks capacity will irreparably harm the estate from ever asserting its property rights unless it is immediately reversed.

An even more grievous error is the ruling that Allen justifiably did not know decedent owned any property and therefore did not make any sworn misrepresentations to the Probate Court, because decedent had, 53 years before his death in 1933, signed a Vow of Poverty to his Dominican Order. (slip op. at 12). Apart from possibly being some sort of unconstitutional mixture of secular and canon law, plaintiff advised Judge Gardephe, that applying New York law as required under Rule 17 in evaluating capacity to sue, such a Vow of Poverty is not recognized binding by New York Surrogates in the administration of an estate. A Vow merely constitutes a contract to be enforced against the Estate after the representative has fulfilled his obligations to marshal and inventory property. The Order that claims the property has not rights as an heir and instead is nothing more

22

than an ordinary creditor of the Estate if the Vow is deemed valid and enforceable.

In re Estate of Attea, 12 N.Y.S. 3rd 522 (NY Surrogate Court 2015).


## CONCLUSION

Plaintiff seeks reversal of dismissal of the action and remand to the District Court, while her application to be estate representative in the District of Columbia Probate Court is pending. In the interim, all stays of discovery should be lifted and plaintiff should be permitted to prosecute the estate claims as if she was already the representative.

Dated: May 13, 2024                    Respectfully submitted,

                                       By: /s/ Anthony Scordo

                                       Anthony Scordo, Esq.

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that the foregoing brief complies with the requirements of Fed. R. App. P. 32(a)(7)(B).  The typeface used was 14 Point Times New Roman.  According to the word processing system used to prepare this brief, the number of words in this brief is 8,265.


Dated: May 13, 2024

# SPECIAL APPENDIX

i

**SPECIAL APPENDIX**
**TABLE OF CONTENTS**

**Page**

Memorandum Opinion and Order, dated
    January 23, 2024 .................................................... SPA-1

Judgment, dated January 23, 2024 ............................ SPA-17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BARBARA ANN HARTKE, an individual
on her own behalf and on behalf of the
Estate of decedent Gilbert V. Hartke,

                          Plaintiff,

        - against -

BONHAMS & BUTTERFIELDS
AUCTIONEERS CORPORATION and
THE CATHOLIC UNIVERSITY OF
AMERICA,

                          Defendants.

**MEMORANDUM
OPINION & ORDER**

22 Civ. 3571 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff Barbara Hartke – on behalf of the estate of Gilbert V. Hartke (the
"Estate") – asserts rights to a dress worn by Judy Garland in The Wizard of Oz film.  (Mot. to
Amend (Dkt. No. 69); Proposed Second Amended Complaint ("SAC") (Dkt. No. 69-1))

Plaintiff Hartke filed this action on May 3, 2022, asserting claims for conversion,
false advertising, and breach of duty, and seeking a declaratory judgment and permanent
injunction.  (Am. Cmplt. (Dkt. No. 39) ¶¶ 18-37; see also Cmplt. (Dkt. No. 1))[1]  Defendants are
the Catholic University of America (the "University") – which likewise claims ownership of the
dress – and Bonhams & Butterfields Auctioneers Corporation ("Bonhams") – an auction house
seeking to sell the dress on behalf of the University.  (Am. Cmplt. (Dkt. No. 39) ¶¶ 2-3)

On September 20, 2022, Defendants moved to dismiss the Amended Complaint.
(Mot. to Dismiss (Dkt. No. 52))  On December 11, 2023, this Court granted Defendants' motion

---

[1]  The page numbers of documents referenced in this order correspond to the page numbers
designated by this District's Electronic Case Files ("ECF") system.

SPA-2

to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, concluding that

Plaintiff had not established standing.  See Hartke v. Bonhams & Butterfields Auctioneers Corp.,

No. 22 Civ. 3571 (PGG), 2023 WL 8551889, at *1, *9 (S.D.N.Y. Dec. 11, 2023) (the "Dismissal

Order").  Dismissal was with leave to move to amend.  Id. at *9.

On January 2, 2024, Plaintiff Hartke moved – pursuant to Fed. R. Civ. P. 15(a)(2)

– for leave to file a Second Amended Complaint.  (See Mot. to Amend (Dkt. No. 69))  In the

proposed SAC, Plaintiff re-pleads her claims for conversion, false advertising, breach of duty

and for a declaratory judgment, and adds a new cause of action for replevin.  (See SAC (Dkt. No.

69-1) ¶¶ 19-38)

For the reasons stated below, Plaintiff's motion for leave to file the proposed

Second Amended Complaint will be denied.

## BACKGROUND[2]

### I.    FACTS[3]

Gilbert V. Hartke was a Roman Catholic priest and a member of the Dominican

order.  (SAC (Dkt. No. 69-1) ¶ 9; Shepherd Decl., Ex. B (Allen Aff.) (Dkt. No. 21-13) at 1 ¶ 3)[4]

---

[2] The relevant facts are set forth in greater detail in the December 11, 2023 Dismissal Order, Hartke, 2023 WL 8551889, at *1-4, and are only summarized below.  Familiarity with the Dismissal Order is assumed.

[3] The Court's factual statement is drawn from the proposed SAC, and from affidavits, declarations, and other materials submitted in this action.  For purposes of resolving Plaintiff Hartke's motion to amend, a court must accept as true all well-pleaded facts in the SAC, but may also "consider affidavits and other material beyond the pleadings to resolve the jurisdictional issue."  J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004); see Gary Friedrich Enters., LLC v. Marvel Enters., Inc., No. 08 Civ. 1533 (BSJ) (JCF), 2011 WL 1142916, at *4 (S.D.N.Y. Mar. 22, 2011).

[4] The page numbers of documents referenced in this order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

He died on February 21, 1986.  (SAC (Dkt. No. 69-1) ¶ 6)  Plaintiff Barbara Hartke is Father

Hartke's niece, and she brings this action to recover a dress that allegedly belongs to Father

Hartke's estate.  (Id. ¶¶ 1, 6, 11)

Father Hartke taught at Catholic University for many years and served as chair of

the University's drama department.  (Id. ¶ 9)  In this capacity, Father Hartke came to know

Mercedes McCambridge, an Oscar-winning actress.  (Id. ¶ 10)  In gratitude for Father Hartke's

"counse[l]ing and support," McCambridge gave him – in or about March 1973 – a blue pinafore

dress with a white blouse, which had been worn by Judy Garland when she appeared as Dorothy

in The Wizard of Oz film (the "Judy Garland Dress").  (Id. ¶¶ 8, 10; see Shepherd Decl., Ex. F

(Dkt. No. 21-22))

When Father Hartke became a priest of the Dominican order on August 14, 1933,

he took a vow of poverty, renounced all material goods, and declared that "all goods which may

in anyway accrue to me individually belong to the [Dominican] Order. . . ."  (Allen Aff. (Dkt.

No. 21-13) at 3)  After taking his priestly vows, Father Hartke was assigned to the College of the

Immaculate Conception, a division of the Dominican Fathers of the Province of St. Joseph.  (Id.

at 1 ¶ 3)

Father Hartke died intestate in the District of Columbia on February 21, 1986.

(SAC (Dkt. No. 69-1) ¶ 6)  At the time of his death, Father Hartke remained a member of the

Dominican Fathers of the Province of St. Joseph.  (See Allen Aff. (Dkt. No. 21-13) at 1 ¶¶ 3, 5)

In July 1986, the College of the Immaculate Conception – allegedly "the largest

creditor of [Father Hartke's] estate" – petitioned the Superior Court of the District of Columbia,

Probate Division, to administer the estate.  (See Shepherd Decl., Ex. D (Pet. for Probate) (Dkt.

No. 21-15) at 1; SAC (Dkt. No. 69-1) ¶ 6)  The College of the Immaculate Conception's

treasurer, Father Joseph P. Allen, petitioned the Probate Court to be appointed as personal

representative of the Estate.  (Allen Aff. (Dkt. No. 21-13) at 1 ¶ 1)  In his application, Father

Allen states that Father Hartke had no will or tangible property; that he had "agreed [in his

priestly vows] to transfer any future property he might receive to the Dominican Order"; and that

he "owned no other assets other than the right to publish[] his name, having delivered all he

came into possession of to The College of the Immaculate Conception."  (Id. at 1 ¶¶ 2-5)  Father

Allen further states that "[s]ince the only property subject to administration is the very property

which the College [of the Immaculate Conception] claims[,] there is no reason to appoint one of

the decedent's heirs [as] Personal Representative."  (Id. at 2 ¶ 7)

        A copy of Father Allen's petition was mailed to fourteen members of Father

Hartke's family, including "Mrs. Barbara Hartke, 1450 N. Astor, Chicago, Illinois 60610," who

was misidentified as the "wife of [Father Hartke's] deceased nephew."[5]  (Pet. for Probate (Dkt.

No. 21-15) at 5)  On October 28, 1986, the Probate Court appointed Father Allen as the personal

representative of the Estate.  (See Shepherd Decl., Ex. C (Inventory) (Dkt. No. 21-14) at 1)  On

November 14, 1986, Father Allen affirmed that he had mailed a copy of the notice of his

appointment to fifteen "heirs and legatees," as required under D.C. Code §§ 20-704(a) and (b).

(Id. at 2)  On January 21, 1987, Father Allen filed an inventory of the Estate that listed the only

item as "[t]he right to publicize the decedent's name."  (Id. at 3; see also SAC (Dkt. No. 69-1) ¶

6)

---

[5]  In a "certification" submitted in support of her motion for a preliminary injunction, Plaintiff
Hartke states that she has "no recollection of receiving any documentation by mail or otherwise
pertaining to the probate of [her] uncle's estate."  (Hartke Certification (Dkt. No. 24-1) at ¶ 12)
She further states that – while the address listed for her in Father Allen's petition is correct – her
apartment number was omitted from the address.  (Id.)

The probate court proceedings were closed.  (Tso Decl., Ex. D (Dkt. No. 21-5); SAC (Dkt. No. 69-1) ¶ 6)

According to Plaintiff, after Father Hartke's death in 1986, the Judy Garland Dress was lost "for decades."  (SAC (Dkt. No. 69-1) ¶ 9)  In 2021 the dress was discovered "in a storage location on the Catholic University campus."  (Id.)

In late March 2022, the University entered into a consignment agreement with Defendant Bonhams, an auction house.  (Pernes Decl. (Dkt. No. 19) ¶ 3)  Bonhams advertised the Judy Garland Dress for auction on May 24, 2022.  (SAC (Dkt. No. 69-1) ¶ 7; see Tso Decl., Ex. H (Dkt. No. 21-9))

On June 13, 2022, Plaintiff applied to the Probate Court to reopen the Estate and succeed Father Allen as personal representative.  (SAC (Dkt. No. 69-1) ¶ 16)  The Probate Court did not act on Plaintiff's petition, because it had not been properly filed.  (Repczynski Decl., Exs. C, D (Dkt. Nos. 72-7, 72-8))[6]  On October 24, 2023, Plaintiff "refiled a petition to reopen the Estate and appoint [herself as] personal representative."  (SAC (Dkt. No. 69-1) ¶ 17)  That application "remains pending in the [Probate C]ourt."  (Id.)  On December 18, 2023, Plaintiff "applied . . . for an Order to Show Cause . . . to be named as temporary [s]pecial [a]dministrator of the [E]state."  (Id. ¶ 18)  That application also "remains pending" in Probate Court.  (Id.)

---

[6]  Pursuant to Fed. R. Evid. 201, this Court takes judicial notice of the case summary for the probate proceedings in In re: Hartke, Gilbert V. (Case No. 1986-ADM-1663).  See Yien-Koo King v. Wang, No. 14 Civ. 7694 (JFK), 2018 WL 1478044, at *4 n.1 (S.D.N.Y. Mar. 26, 2018) ("The Court may take judicial notice of public records in related court proceedings in ruling on a motion to dismiss.").

**SPA-6**

II.   **PROCEDURAL HISTORY**

    A.   **The Amended Complaint and Defendants' Motion to Dismiss**

On May 3, 2022, Plaintiff Hartke filed this action – in her individual capacity and on behalf of the Estate – claiming that the University had converted the Judy Garland Dress, and that the University and Bonhams had falsely advertised the provenance of the dress in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  (Cmplt. (Dkt. No. 1))  The Complaint also seeks a declaration that the Judy Garland Dress is the property of the Estate.  (Id. ¶¶ 17-23)

On May 6, 2022, Plaintiff moved for a temporary restraining order and preliminary injunction barring Bonhams from auctioning the Judy Garland Dress at an auction scheduled for May 24, 2022.  (Dkt. No. 6)  This Court issued a preliminary injunction order on May 23, 2022.  (See May 23, 2022 Order (Dkt. No. 26))

The Amended Complaint was filed on June 21, 2022, includes the same causes of action originally pled, and adds a cause of action for "breach of duty to exercise reasonable care."  (Am. Cmplt. (Dkt. No. 39) ¶¶ 18-37)

On September 20, 2022, Defendants moved to dismiss the Amended Complaint, arguing that (1) Plaintiff lacks standing to sue either in her own name or on behalf of the Estate; and (2) in any event, the Amended Complaint fails to state a claim.  See Dismissal Order, 2023 WL 8551889, at *4 (citing Mot. to Dismiss (Dkt. No. 52)).

On December 11, 2023, this Court granted Defendants' motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1).  The Court concluded that Plaintiff lacked standing to pursue her claims, whether on her own behalf or on behalf of the Estate.  Id. at *1, *9.

As to Plaintiff's standing to assert claims on her own behalf, the Court noted that "the Amended Complaint repeatedly asserts that the Judy Garland Dress belongs to [Plaintiff's]

6

uncle's estate." Id. at *5 (citing Am. Cmplt. (Dkt. No. 36) ¶¶ 6, 8, 12, 22, 23). Given these

factual allegations, Plaintiff had "not pled facts demonstrating that she is a 'real party in interest'

under Fed. R. Civ. P. 17(a)." Id. (quoting Fed. R. Civ. P. 17(a)).

       As to Plaintiff's standing to sue on behalf of the Estate, this Court explained that

New York law – "'the law of the state where [this C]ourt is located'" – governed the

determination of Plaintiff's "capacity to sue on behalf of the estate." Id. at *6 (quoting Fed. R.

Civ. P. 17(b)(3)). "New York law is clear that – absent 'extraordinary circumstances' – '[o]nly a

duly appointed personal representative may bring suit on behalf of a decedent.'" Id. (quoting

Garmon v. Cnty. of Rockland, No. 10 Civ. 7724 (ALC) (GWG), 2013 WL 541380, at *3

(S.D.N.Y. Feb. 11, 2013)). Because (1) Plaintiff had not alleged that she had been "appointed as

executor, administrator, or in some other capacity as the personal representative of the Estate,"

id. at *6; and (2) "there are no 'extraordinary circumstances' here that authorize Plaintiff to bring

a claim on behalf of the Estate under New York law," id. at *7, this Court concluded that

Plaintiff Hartke lacked standing to assert a claim on behalf of the Estate. Id. at *9.

       Noting that the Amended Complaint stated that "'[P]laintiff [had] applied in the

Superior Court of the District of Columbia, Probate Division, to reopen the Estate and to succeed

[Father] Allen as personal representative,'" id. at *6 (quoting Am. Cmplt. (Dkt. No. 39) ¶ 17),

but that the Amended Complaint did not disclose whether the Probate Court had addressed her

application, id. at *3, *6, this Court granted Plaintiff leave to move to amend to establish her

eligibility to represent the Estate. This Court also directed Plaintiff to show cause by December

20, 2023, why this Court's May 23, 2022 preliminary injunction order should not be vacated,

given that she lacked standing. Id. at *9.

**B.**     **The Proposed Second Amended Complaint**

On January 2, 2024, Plaintiff moved for leave to file a Second Amended Complaint.  (Mot. to Amend (Dkt. No. 69)  The proposed SAC is attached as an exhibit to the motion.  (SAC (Dkt. No. 69-1))

All claims in the SAC are asserted on behalf of the Estate; Plaintiff Hartke does not assert claims on her own behalf.  (See id. at 2)  The SAC pleads the same causes of action, but adds a new cause of action for replevin.  (Id. ¶¶ 28-32)  The SAC includes the following new factual allegations:

(1) on June 6, 2022, Plaintiff Hartke "retained counsel in the District of Columbia" to "formally appl[y]" to "reopen the Estate" and appoint her "as [p]ersonal representative" of the Estate in the Superior Court of the District of Columbia, Probate Division (id. ¶ 16);

(2) "shortly []after" June 13, 2022, Plaintiff Hartke was "advised" by counsel that the Probate Court "could not retrieve the original file" in the 1986 proceeding from its electronic records, would need to "obtain" a "hard copy . . . from [its] physical archives," and "had a backlog of requests because of the pandemic" (id.);

(3) on October 16, 2023, Plaintiff Hartke was informed by counsel that docket entries in the original probate proceeding were "scanned and uploaded" to the Probate Court's "electronic system" (id.);

(4) on October 24, 2023, Plaintiff Hartke "refiled a petition to reopen the Estate and appoint [herself as] personal representative" (id. ¶ 17)

(5) Plaintiff Hartke's application "remains pending" (id.);

(6) on December 1, 2023, the Probate Court "ordered [P]laintiff to file a list of interested parties" and to obtain a written "waiver[] of bond" from each interested party (id.); and

(7) on December 18, 2023, Plaintiff Hartke filed an order to show cause in Probate Court, seeking to be "appoint[ed] as [s]pecial [a]dministrator of the estate." (Id. ¶ 18; see also Pltf. Br., Ex. 6 (Dkt. No. 70-6))  The application "remains pending."  (SAC (Dkt. No. 69-1) ¶ 18)

**DISCUSSION**

I.   **LEGAL STANDARDS**

Under Fed. R. Civ. P. 15, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). District courts "ha[ve] broad discretion in determining whether to grant leave to amend." Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000).

Leave to amend may properly be denied, however, in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); see Murdaugh v. City of New York, No. 10 Civ. 7218 (HB), 2011 WL 1991450, at *2 (S.D.N.Y. May 19, 2011) ("Although under [Rule 15(a),] leave to amend complaints should be 'freely given,' leave to amend need not be granted where the proposed amendment is futile.") (quoting Foman, 371 U.S. at 182). A motion for "leave to amend would be futile [if] the proposed amended complaint did not cure the original complaint's deficiencies . . . [as to] subject matter jurisdiction" under Rule 12(b)(1). Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Germany, 615 F.3d 97, 99 (2d Cir. 2010).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "'The doctrine of standing asks whether a litigant is entitled to have a federal court resolve [her] grievance. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limits on its

exercise.'" United States v. Suarez, 791 F.3d 363, 366 (2d Cir. 2015) (quoting Kowalski v.

Tesmer, 543 U.S. 125, 128 (2004)).

     The prudential limits are codified in Rule 17(a) of the Federal Rules of Civil

Procedure, which requires that "[a]n action . . . be prosecuted in the name of the real party in

interest." Fed. R. Civ. P. 17(a).  In other words, "only 'a person who possesses the right to

enforce [a] claim and who has a significant interest in the litigation' can bring the claim."

Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l., 790 F.3d 411, 420-21 (2d

Cir. 2015) (quoting Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het

Kapitaal Van Saybolt Int'l B.V. v. Schreiber, 407 F.3d 34, 48 n.1 (2d Cir. 2005)).  "'The purpose

of the rule is to prevent multiple or conflicting lawsuits by persons such as assignees, executors,

or third-party beneficiaries, who would not be bound by res judicata principles.'" Id. at 421

(quoting Gogolin & Stelter v. Karn's Auto Imports, Inc., 886 F.2d 100, 102 (5th Cir. 1989)).

     In considering a motion to dismiss under Rule 12(b)(1), a court "must accept as

true all material factual allegations in the complaint," but a court is "not to draw inferences from

the complaint favorable to plaintiffs." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110

(2d Cir. 2004).  A court "may consider affidavits and other materials beyond the pleadings to

resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements

contained in the affidavits." Id.

     "The party opposing a motion to amend . . . bears the burden of establishing that

an amendment would be futile." Bonsey v. Kates, No. 13 Civ. 2708 (RWS), 2013 WL 4494678,

at *8 (S.D.N.Y. Aug. 21, 2013) (citing Blaskiewicz v. Cnty. of Suffolk, 29 F. Supp. 2d 134, 137-

38 (E.D.N.Y. 1998)).

## II.  **ANALYSIS**

The SAC does not contain new factual allegations that cure the standing defects identified in the Dismissal Order.[7]

As explained in the Dismissal Order, in order to bring suit on behalf of a decedent under New York law, a plaintiff must (1) be a "'a duly appointed personal representative,'" Dismissal Order, 2023 WL 8551889, at *6 (quoting Garmon, 2013 WL 541380, at *3) (collecting cases); or (2) plead "extraordinary circumstances" that "authorize [her] to bring a claim on behalf of the estate" in a capacity other than as personal representative. Id. at *7 (citing Aetna Life Ins. Co. v. Frank, 592 F. Supp. 3d 317, 322 (S.D.N.Y. 2022)). "'Extraordinary circumstances' are implicated 'where the executor is allegedly directly involved in purported egregious conduct and self-dealing that negatively impacts the potential assets of the estate,'" id. (quoting Aetna, 592 F. Supp. 3d at 322)); or in "'cases of collusion, of insolvency of the personal representatives, of refusal by them to sue, whether collusively or bona fide . . . or of the existence of other special circumstances such as the fraudulent transfer of the trust property by the personal representatives themselves.'" Id. (quoting Lefkowitz, 2003 WL 22480049, at *6).

The SAC does not plead that the Probate Court appointed Plaintiff Hartke to serve as the executor, administrator, or personal representative of Father Hartke's estate, or that she received any letters of administration. See Garmon, 2013 WL 541380, at *3 ("Only a duly appointed personal representative may bring suit on behalf of a decedent.") (citing Palladino v. Metro. Life Ins. Co., 188 A.D.2d 708, 709 (3d Dept. 1992)); N.Y. Est. Powers & Trusts § 1-2.13 (defining a "personal representative" of an estate as "a person who has received letters to

---

[7] As noted above, in the SAC Plaintiff Hartke abandons her previous efforts to assert claims on behalf of herself.  The SAC only asserts claims "on behalf of the Estate of Gilbert V. Hartke." (SAC (Dkt. No. 69-1) at 2, 8-10)

administer the estate of a decedent"). And while the SAC alleges that Plaintiff Hartke applied (1) "to reopen the Estate and be named [as p]ersonal [r]epresentative" on June 13, 2022, and October 24, 2023; and (2) "for an [o]rder to [s]how [c]ause appointing [her] as [s]pecial [a]dministrator" of Father Hartke's estate on December 18, 2023, Plaintiff's applications "remain[] pending in the [Probate C]ourt." (SAC (Dkt. No. ¶¶ 16-18) In sum, Plaintiff Hartke is still not a "duly appointed personal representative" of Father Hartke's estate. Garmon, 2013 WL 541380, at *3 ("Since Plaintiff is not the administrator on his son's estate, he lacks standing to sue on his son's behalf.").

Nor does the SAC plead facts demonstrating "extraordinary circumstances" – such as fraud or intentional misrepresentation – that would assist Plaintiff in bringing claims on behalf of her uncle's estate even though she is not the Estate's personal representative. See Lewis v. DiMaggio, 115 A.D. 3d 1042, 1044 (3d Dept. 2014) (applying "extraordinary circumstances" standard in action brought by beneficiaries of an estate, noting that in cases "involving fraud or undue influence, the complaint must set forth in detail the circumstances constituting the wrong"). While the SAC, like the Amended Complaint, complains that Father Allen stated in his inventory that Father Hartke did not own property other than "[t]he right to publicize [his] name" (SAC (Dkt. 69-1) ¶ 6; Am. Cmplt. (Dkt. No. 39) ¶ 6), neither pleading alleges facts suggesting that Father Allen knew that Father Hartke owned physical property. And the record shows that Father Allen was aware that – in becoming a Dominican priest on August 14, 1933 – Father Hartke had taken a vow of poverty, renounced all material goods, and declared that "all goods which may in anyway accrue to me individually belong to the [Dominican] Order. . . ." (Allen Aff. (Dkt. No. 21-13) at 3) In short, there is no basis for this Court to find that Father Allen committed fraud or made a misrepresentation to the Probate Court

in stating that Father Hartke had no physical property.  As the Court explained in the Dismissal

Order, Plaintiff's conclusory claim of fraud and intentional misrepresentation (see Am. Cmplt.

(Dkt. No. 39) ¶ 6; see also SAC (Dkt. No. 69-1) ¶ 6) is not sufficient to allege "extraordinary

circumstances."  Dismissal Order, 2023 WL 8551889, at *8-9; see Fed. R. Civ. P. 9(b) ("In

alleging fraud . . . , a party must state with particularity the circumstances constituting fraud

. . . .").[8]

        Because Plaintiff has not (1) demonstrated that she has been appointed as personal

representative of the Estate; or (2) shown that there are "extraordinary circumstances" that would

justify hearing her claims even absent such an appointment, she lacks standing to pursue the

claims set forth in the SAC.

        Plaintiff argues, however, that even if she is not the real party in interest – a fact

that she acknowledges is a "standing defect" – she "has demonstrated due diligence in seeking

appointment as personal representative," and this Court should allow her "reasonable time to . . .

substitut[e]" herself as a personal representative.  (Pltf. Br. (Dkt. No. 70) at 2, 5)  Plaintiff asks

that she be "grant[ed] leave to file the [SAC]," and that this case be "permitted to proceed."  (Id.

at 5)

_____

[8]  In moving for leave to amend, Plaintiff Hartke states that she has "never raised the argument
that [extraordinary] circumstances existed."  (Pltf. Br. (Dkt. No. 70) at 6; see also id. (referring to
the Dismissal Order's discussion of extraordinary circumstances as "essentially prop[ping] up
and knock[ing] down a straw man argument never made by [P]laintiff"); id. at 7 ("[P]laintiff has
not sought to argue that Allen's misrepresentations . . . constitute[] extraordinary
circumstances.")) But in the Amended Complaint, Plaintiff asserts that "the statement of
[Father] Allen that there was no personalty other than [the right to publicize the decedent's
name] was false, fraudulent amounting to perjury, or at the very least, reckless disregard for the
truth."  (Am. Cmplt. (Dkt. No. 39) ¶ 6)  And in the SAC, Plaintiff repeats her claim that Father
Allen made "a misrepresentation to the Court . . . either intentionally[] or negligently and with
reckless disregard for the truth."  (SAC (Dkt. No. 69-1) ¶ 6)  The clear import of these
allegations is that "extraordinary circumstances" justify hearing Hartke's claims, even though
she has not been appointed a personal representative of the Estate.

In support of her argument, Plaintiff cites Yien-Koo King v. Wang, No. 14 Civ. 7694 (JFK), 2018 WL 1478044 (S.D.N.Y. Mar. 26, 2018).  (See Pltf. Br. (Dkt. No. 70) at 2-4)  In King, two children of the decedent sought to represent their father's estate.  King, 2018 WL 1478044, at *1.  In September 2016, the decedent's daughter sued on behalf of her father's estate, even though she had not been appointed as personal representative.  In June 2017, Judge Keenan dismissed plaintiff's claims without prejudice, because she "had not been named executrix or administratrix of [her father's] estate, as required to bring suit on behalf of the decedent's estate under New York law."  Id. at *4.  In February 2018, the daughter moved for reconsideration, noting that the Surrogate's Court had "issued preliminary letters testamentary to [her]."  Id.  Because the daughter's "appointment [constituted] new evidence not available . . . at the time of [d]efendants' motion to dismiss," and because "preliminary letters testamentary 'confer[red] upon [the daughter] . . . all the powers and authority . . . of an administrator,'" Judge Keenan found that "as preliminary executrix, [the daughter] now has standing to sue on behalf of [her father's e]state."  Id. at *5 (quoting N.Y. Surr. Ct. Proc. Act § 1412(3)(a)).

King merely confirms that only an estate's executor or administrator has standing to litigate on behalf of an estate.  It was only after the daughter was issued preliminary letters testamentary that Judge Keenan found that she had cured the standing deficiency.  See Wang, 2018 WL 1478044, at *5-6; see also Purcell ex rel. Est. of Tyree v. City of New York, No. 18-CV-3979 (PKC) (RLM), 2020 WL 2559796, at *6 (E.D.N.Y. May 19, 2020) (finding that plaintiff had standing to assert claims on behalf of estate after "the Surrogate's Court, State of New York, Richmond County, provided [plaintiff] with Limited Letters of Administration"; "[n]ow that [p]laintiff has demonstrated she is . . . the real party in interest . . . the [c]ourt is permitting [p]laintiff to substitute herself as the Administrator of the Estate for the Estate, as

permitted under FRCP 17"); Estwick v. U.S. Air Shuttle, 950 F. Supp. 493, 499 (E.D.N.Y. 1996)

(finding that plaintiff had "cured" her "standing deficiency" after her "subsequent appointment

as administratrix"); Brohan on Behalf of Brohan v. Volkswagen Manufacturing Corp. of

America, 97 F.R.D. 46, 48-49 (E.D.N.Y. 1983) (granting leave to amend "to allow plaintiff to

sue as executrix" after she was "appointed [as] executrix of her husband's will").

　　　　Here, by contrast, Plaintiff Hartke has not been appointed as personal

representative of the Estate, and therefore she lacks standing to assert claims on behalf of the

Estate.  See Harrison v. Harlem Hosp., No. 5 Civ. 8271 (WHP), 2007 WL 2822231, at *2

(S.D.N.Y. Sept. 28, 2007), aff'd, 364 F. App'x 686 (2d Cir. 2010) (summary order) (dismissing

complaint "[b]ecause [plaintiff] did not receive letters of administration until June 22, 2005,

[and] no [p]laintiff had the legal capacity to bring a . . . claim on [the estate's] behalf until that

date"); Weinstein v. Med. Ctr. Hosp. of Vermont, Inc., 358 F. Supp. 297, 299 (D. Vt. 1972)

(dismissing case because "[plaintiff] is without capacity to maintain the present action until she

has authority to proceed by way of ancillary letters of administration").

　　　　To the extent that Plaintiff Hartke argues that she has not been allowed "a

reasonable time" to cure the standing deficiency here (Pltf. Br. (Dkt. No. 70) at 2), this Court

rejects that argument.  This case has been pending since May 3, 2022 (see Cmplt. (Dkt. No. 1)),

and Defendants notified Plaintiff of the standing deficiency in their June 17, 2022 opposition to

her request to amend the Complaint.  (Dkt. No. 36 at 2 ("Plaintiff, as an individual, has no 'case

or controversy' with the Defendants because she is not a representative of the Estate   . . . and has

no interest in the [Judy Garland] Dress.")

　　　　Although Plaintiff has made various applications to the D.C. Probate Court, she

has not been appointed as personal representative of the Estate, and it is not clear that Plaintiff

will ever be so designated.  Because Plaintiff lacks standing, this Court lacks subject matter

jurisdiction to consider her claims.  <u>See</u> <u>Lunney v. United States</u>, 319 F.3d 550, 557 (2d Cir.

2003) (where there is no real party in interest, a "case must be dismissed because subject matter

jurisdiction is lacking").

## **CONCLUSION**

For the reasons stated above, Plaintiff's motion for leave to file a Second

Amended Complaint is denied, and this action is dismissed without prejudice.[9]  Because Plaintiff

has not shown cause why this Court's May 23, 2022 order granting her a preliminary injunction

should remain in place, that Order (Dkt. No. 26) is hereby vacated.  The Clerk of Court is

directed to terminate the motion (Dkt. No. 69) and to close this case.

Dated: New York, New York
       January 23, 2024

SO ORDERED.

Paul G. Gardephe
United States District Judge

---

[9] "Where[, as here,] a case is dismissed for lack of Article III standing," "that disposition cannot
be entered with prejudice, and instead [the case] must be dismissed <u>without</u> <u>prejudice</u>." <u>Katz v.</u>
<u>Donna Karan Co., L.L.C.</u>, 872 F.3d 114, 121 (2d Cir. 2017) (emphasis in original); <u>see also</u>
<u>Hernandez v. Conriv Realty Associates</u>, 182 F.3d 121, 123 (2d Cir. 1999) ("Article III deprives
federal courts of the power to dismiss a case with prejudice where federal subject matter
jurisdiction does not exist.").

16

SPA-17

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
BARBARA ANN HARTKE, an individual
on her own behalf and on behalf of the Estate
of decedent Gilbert V. Hartke,

Plaintiff,

      -v-

BONHAMS & BUTTERFIELDS
AUCTIONEERS CORPORATION, A
DELAWARE CORPORATION; THE
CATHOLIC UNIVERSITY OF AMERICA,
A NON-PROFIT DISTRICT OF
COLUMBIA CORPORATION,

Defendant.

------------------------------------------------------------------X

22 **CIVIL** 3571 (PGG)

**JUDGMENT**

     It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons

stated in the Court's Memorandum Opinion & Order dated January 23, 2024, Plaintiffs motion

for leave to file a Second Amended Complaint is denied, and this action is dismissed without

prejudice. Because Plaintiff has not shown cause why this Court's May 23, 2022 order granting

her a preliminary injunction should remain in place, that Order (Dkt. No. 26) is hereby vacated.

Accordingly, the case is closed.

**Dated:** New York, New York

     January 23, 2024

**RUBY J. KRAJICK**
**Clerk of Court**

BY:

_____
**Deputy Clerk**
